UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID ROGOZ, : | |
|     PLAINTIFF, : | |
| : | CIVIL ACTION NO. |
| : | 3:11cv00500(VLB) |
| v. : | |
| : | |
| CITY OF HARTFORD, : | |
| CHIEF OF POLICE DARYL K. ROBERTS, : | |
| DETECTIVE G. WATSON, DETECTIVE : | |
| RIVERA, OFFICER GEORGE WATER, : | |
| OFFICER JAMES RUTKAUSKI, OFFICER : | |
| BRANDON FLORES, OFFICER STEVEN J. : | |
| PILESKI, OFFICER CESAR A. BEIROS, : | |
|     DEFENDANTS. : | SEPTEMBER 24, 2012 |

**MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART DEFENDANTS CITY OF HARTFORD'S AND CHIEF ROBERTS' [DKT. #27] MOTION TO DISMISS**

I.   <u>Introduction</u>

The Plaintiff, David Rogoz ("Rogoz"), brings this action against Defendants City of Hartford (the "City"), Chief of Police Daryl Roberts ("Chief Roberts"), Detectives Watson and Rivera, and Officers Water, Rutkauski, Flores, Pileski, and Beiros (the Detectives and Officers, collectively, the "Defendant Officers"). Plaintiff alleges claims against the Defendant Officers for violations of his Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 as well as his rights under the Connecticut Constitution on the basis that the Defendant Officers allegedly stopped, detained, searched and seized Plaintiff without reasonable suspicion or probable cause, and used excessive force against him (Count One), state common law negligence, assault and battery, false

imprisonment, and negligent and/or intentional infliction of emotional distress (Count Two).  Plaintiff also alleges Fourth and Fourteenth Amendment federal constitutional as well as Connecticut constitutional violations against the City and Chief Roberts based on the existence of a policy or culture of failure to properly screen, discipline, transfer, counsel and/or otherwise control, and failure to properly train and supervise Hartford's police officers (Count Three).  Lastly, Plaintiff alleges municipal liability under Conn. Gen. Stats. §§ 52-557n and 7-465 (Count Four).  Currently pending before the Court are Defendant City of Hartford's and Chief Roberts' Motion to Dismiss Counts Three and Four, which relate specifically to allegations against the City of Hartford and Chief Roberts, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

II.     Factual Background

The following facts are taken from Plaintiff's complaint.  Plaintiff was driving in the vicinity of 169 Lawrence St., Hartford, CT at approximately 11:05 p.m. on May 8, 2009.  [Dkt #1, Complaint at ¶ 11.]  He briefly pulled over to the curb in that area and, as he "prepared to resume driving," defendant Detectives Watson and Rivera pulled their vehicle quickly in front of his.  [*Id.* at ¶¶ 12-13.]  One of the detectives exited the vehicle and ran toward the passenger door of Plaintiff's car, but "failed to identify himself as a police officer in any respect." [*Id.* at ¶¶ 14-15.]  Believing that he was in imminent danger, Plaintiff drove quickly away from Detectives Watson's and Rivera's vehicle and eventually onto Route 2 East.  [*Id.* at ¶ 16.]

The defendant Detectives Watson and Rivera pursued Plaintiff on Route 2 East "with lights and sirens activated," joined by "other police vehicles driven by Defendants Water, Rutkauski, Flores, Pileski, and Beiros." [*Id.* at ¶ 17.] Aware then that his pursuers were police officers, Plaintiff pulled his vehicle to the highway's shoulder. [*Id.* at ¶ 18.] Plaintiff complied with demands by the Defendant Officers to show his hands, exit his vehicle, and lie face down with his hands behind his back, "offering no resistance of any sort." [*Id.* at ¶ 19.] Despite his compliance, Plaintiff alleges that while on the ground the Defendant Officers "subjected his upper back to severe physical assault, causing him to suffer excruciating pain, and cursed at him." [*Id.* at ¶ 20.] After he was placed in custody, Plaintiff alleges that he requested but did not receive prompt medical care for two days and, once provided, he was informed that he had sustained severe muscle strain and multiple fractures to his back and ribs. [*Id.* at ¶¶ 21-22.]

Plaintiff filed a Civilian Complaint with the Hartford Police Department on September 11, 2009. Daryl K. Roberts, then the chief of the Hartford Police Department, and the City of Hartford, failed to investigate this complaint. [*Id.* at ¶ 28.] The Plaintiff further alleges that the City of Hartford, and Daryl K. Roberts, individually as the City's final policymaker in matters of police conduct, had in place a policy, de facto or otherwise, of not properly screening, investigating or disciplining officers for misconduct, and a policy of inadequately training officers in the law of search and seizure, the permissible use of force by police officers, and the duty of police officers to intervene against the deprivation of a person's civil rights by another officer. [*Id.* at ¶ 24-28.] The Plaintiff files a Notice of Intent

3

to Commence Action on August 31, 2009, and an Amended Notice of Intent to Commence Action on October 23, 2009 regarding the events at issue in this action. [*Id.* at ¶s 23-24.]

III.    Standard of review

Defendants City of Hartford and Chief Roberts submitted an answer to Plaintiff's complaint before filing the instant motion to dismiss. "[A] motion to dismiss for failure to state a claim ... that is styled as arising under Rule 12(b) but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)," for which the standard "is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (upholding the district court's decision to consider a 12(b)(6) motion after defendant had filed a valid answer).

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

4

'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949-50).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

IV.  Discussion

a. Count Three: Municipal Liability Pursuant to 42 U.S.C. § 1983

Defendants City of Hartford and Chief Roberts argue that Plaintiff's Fourth Count should be dismissed for failure to state a *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) claim.  "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell*, 436 U.S. at 694.  "In order to prevail on a claim against a municipality under section 1983 based on

5

acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 f.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690-91).  The fifth element, requiring an official policy, "can only be satisfied where a plaintiff proves that a 'municipal policy of some nature caused a constitutional tort.'"  *Id.* (citing *Monell*, 436 U.S. at 691); see also *Ochoa v. City of West Haven*, 2011 WL 3267705, at *8 (D. Conn. July 29, 2011) (quoting same).  A municipality may be "held liable if a plaintiff proves the municipality violated a federally protected right through (1) municipal policy, (2) municipal custom or practice, or (3) the decision of a municipal policymaker with final policymaking authority."  *Zherka v. DiFiore*, 412 Fed. Appx. 345, 348 (2d Cir. 2011) (citing *Monell*, 436 U.S. at 695).

     A plaintiff may overcome a motion for judgment on the pleadings by asserting facts which if proved "establish municipal liability by showing that a municipal policy or custom existed as a result of the municipality's deliberate indifference to the violation of constitutional rights, either by inadequate training or supervision."  *Russo v. City of Hartford*, 341 F.Supp.2d 85, 107 (D. Conn. 2004). "A municipal policy may be pronounced or tacit and reflected in either action or inaction.  In the latter respect, a city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution."  *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (internal quotation marks and citations omitted).

6

Failures to act – such as failures to train or supervise subordinates – "may also evince municipal policy where municipal decisionmakers continue to adhere 'to an approach that they know or should know has failed to prevent' constitutional violations." *Davis v. City of New York*, 75 Fed. Appx. 827, 829 (2d Cir. Sept. 22, 2003). "Where a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied." *City of Canton v. Harris*, 489 U.S. 378, 396 (1989). "[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (internal quotation marks omitted). A plaintiff must demonstrate that, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).

"As the Supreme Court has cautioned, 'deliberate indifference' is 'a stringent standard of fault' and … necessarily depends on a careful assessment of the facts at issue in a particular case." *Cash*, 654 F.3d at 334 (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011)). The Second Circuit has instructed

7

that the "operative inquiry is whether those facts demonstrate that the policymaker's inaction was the result of 'conscious choice' and not 'mere negligence.'" *Id.* (citations omitted).  Deliberate indifference then "may be inferred where 'the need for more or better supervision to protect against constitutional violations was obvious,' but the policy maker 'fail[ed] to make meaningful efforts to address the risk of harm to plaintiffs.'" *Id.* (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) and *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)).  In addition, "a plaintiff must prove that "'action pursuant to official municipal policy' caused the alleged constitutional injury." *Cash*, 654 F.3d at 333 (quoting *Connick*, 131 S. Ct. at 1359).

A claim for failure to train or supervise "will trigger municipal liability only where the failure to train amounts to the deliberate indifference to the rights of those with whom the state officials will come into contact." *Young v. Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998) (internal quotation marks and citation omitted).  The Second Circuit has outlined "three showings required to support a claim that a municipality's failure to train amounted to 'deliberate indifference' to the rights of citizens." *Id.* at 903-904.  Therefore to establish a claim of inadequate training or supervision, Plaintiffs mush show that (1) "a policymaker of the municipality knows to a moral certainty that its employees will confront a given situation"; (2) that the "situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) that "the wrong choice by the employee will frequently cause the deprivation of a citizen's

8

constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992) (citations omitted).  Therefore a municipality "cannot be liable if the need for such training was not obvious." *Russo*, 341 F. Supp. 2d at 109 (citing *Vann*, 72 F.3d at 1049).  "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents."  *Vann*, 72 F.3d at 1049.  In addition, "a pattern of misconduct, while perhaps suggestive of inadequate training, is not enough to create a triable issue of fact on a failure-to-train theory.  The plaintiff must offer evidence to support the conclusion that the training program was inadequate, not [t]hat a particular officer may be unsatisfactorily trained or that an otherwise sound program has occasionally been negligently administered, and that a hypothetically well-trained officer would have avoided the constitutional violation."  *Okin v. Village of Cornwall-On-Hudson Police Dept.*, 577 F.3d 415, 440-41 (2d Cir. 2009) (internal quotation marks and citations omitted). In short, there must be a systemic deficiency of which the municipality is or should be aware and fails to address.

      Likewise, a plaintiff alleging failure to screen must also meet the deliberate indifference standard.  See *Atwood v. Town of Ellington*, 427 F. Supp. 2d 136, 147 (D. Conn. 2006) (a "plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that municipal action was taken with 'deliberate indifference' as to its known or obvious consequences.") (internal citations

omitted).  Thus, "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Bd. of Cnty. Comm'rs*, 520 U.S. at 411.  Liability for failure to screen "simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Id*. at 412.  "The fact that inadequate scrutiny of an applicant's background would make a violation of rights more likely cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation." *Id*. at 410-11.

Here, Plaintiff alleges a series of categorical deficiencies in the manner in which the police department was managed. He alleges that he City – acting by and through Chief Roberts, "who was the final policymaker in the area of law enforcement" – had in place "actual and/or de facto policies, practices and customs" including "the failure to screen, discipline, counsel and/or otherwise control police officers engaged in the law of search and seizure; the law of using unreasonable, unjustified and excessive force; and the duty to intervene to protect and secure individual civil rights; and/or the failure to properly train and supervise police officers" in the same.  Plaintiff contends that these policies, practices and customs constitute a deliberate indifference to the "citizens and

residents of the City of Hartford and the State of Connecticut," and were a "moving force" behind the Defendant Officers' alleged violations. [Dkt. #1, Complaint at ¶¶ 25-26]  By way of proof, Plaintiff offers only one assertion.  The only particularized fact contained in the complaint is that the City and Chief Roberts "fail[ed] to investigate Plaintiff's claim of misconduct and other similar claims of misconduct brought by other citizens," amounting to "negligence and a deliberate indifference to the safety and rights of such persons."  [Dkt. #1, Complaint at ¶ 28]

Plaintiff's allegations of municipal liability are conclusory in that the complaint is devoid of any particularized facts from which the court could conclude that a reasonable jury could come reach the conclusion asserted as required to overcome a motion to dismiss. Accordingly, the complaint does not sufficiently plead a *Monell* claim.  Plaintiff has alleged no facts – specific or otherwise - which support an inference of deliberate indifference to the rights of citizens through a failure to train or a failure to supervise as required by the precedent cited above.  Indeed, the Plaintiff alleges only vaguely that certain policies, practices or customs exist – giving rise to an inference of deliberate indifference – but fails to plead any facts in support of their actual existence.   No specific policies, practices or customs are alleged.   As such, Plaintiff's allegations are conclusory and unsubstantiated and do not permit an inference of deliberate indifference.

Plaintiff has also failed to plead any facts demonstrating that the need for training or supervision was obvious.  He does not provide any proof of repeated

complaints of similar civil rights violations followed by a failure on the City's part to meaningfully attempt to investigate such incidents as required to state a claim for failure to train under Second Circuit law.  See *Russo*, 341 F. Supp. 2d at 109; *Vann*, 72 F.3d at 1049.  Indeed, Plaintiff specifically alleges that he himself filed a claim with the Police Department which was not investigated and that others have done the same, but fails to substantiate in any way his contention that the City and Chief Roberts failed to investigate "other similar claims of misconduct brought by other citizens," none of whom Plaintiff specifies.  As the Supreme Court has held, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  *Bd. of Cnty. Comm'rs*, 520 U.S. at 409.  Although the Plaintiff charges in his opposition to Defendants' Motion to Dismiss that "the City of Hartford is no stranger to legal action for police misconduct and it was apparent to the City and Roberts that training was necessary to prevent the use of excessive force," Plaintiff fails to corroborate this assertion in his complaint by providing examples of the City's alleged awareness.  Absent any evidence of a pattern of similar violations to provide "notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."  *Connick*, 131 S.Ct. at 1360.  See *Stengel v. City of Hartford*, 652. F. Supp. 572, 575 (D. Conn. 1987) (dismissing count predicated on existence of custom or policy condoning  and authorizing application of excessive force where Plaintiffs alleged that complaints had been filed with police department against officer on

two prior occasions but no disciplinary action was taken); *Beckford v. City of New Haven*, 2011 WL 6153182 (D. Conn. Dec. 12, 2011)(VLB) (dismissing Plaintiff's failure to train claim where Plaintiff failed to raise specific facts to demonstrate that City had actual or constructive notice of systematic excessive force violations); *Santos v. New York City*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) (motion to dismiss granted "[b]ecause the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff").

Furthermore, Plaintiff has provided no facts to indicate that the City's failure to enforce its regulations to prevent the use of excessive force or the happening of unreasonable searches and seizures was the result of a conscious choice, as opposed to mere negligence, such that the Court could infer deliberate indifference. See *Cash*, 654 F.3d at 334 (stating that the operative inquiry regarding allegations of deliberate indifference is "whether those facts demonstrate that the policymaker's inaction was the result of 'conscious choice' and not 'mere negligence.'") (internal citations omitted). Although Plaintiff vaguely alleges the existence of other complaints regarding excessive force, Plaintiff raises no facts to demonstrate that the City deliberately failed to investigate his claim or those allegedly filed by others. Absent any such factual support, the Court cannot infer that the "need for more or better supervision to protect against constitutional violations was obvious" and the City failed to make "meaningful efforts to address the risk of harm" to the Plaintiff. *Cash*, 654 F.3d at 334 (quoting *Connick*, 131 S.Ct. at 1360).

Lastly, Plaintiff has provided no facts in support of his failure to screen theory. Plaintiff's complete failure to mention how the particular backgrounds of the Defendant Officers would have in any way made it more likely that these officers would violate his federally protected rights is fatal to his claim. Plaintiff does not allege that the Defendant Officers involved in his arrest had a history of violating the laws of search and seizure, using excessive force, or failing to intervene to protect and secure an individual's civil rights. Plaintiff has failed to provide any factual support that the City either received complaints regarding its hiring process or failed to act upon such complaints. Nor does Plaintiff provide any facts regarding the nature of the screening employed by the City in its hiring process. Thus, as detailed above as to Plaintiff's allegations of the City's failure to train and supervise, the Court cannot infer that the City acted with deliberate indifference in its hiring process as to the Defendant Officers.

In sum, Plaintiff has pleaded no facts to allow the Court to infer the existence of any policy, practice or custom that would give rise to a *Monell* claim. Plaintiff has alleged only conclusions, which are not entitled to the assumption of truth. *Iqbal*, 129 S. Ct. at 1949-50. As Plaintiff's complaint tenders only "naked assertions devoid of further factual enhancement," Plaintiff's *Monell* claims must fail. *Id.* at 1949 (internal citations and quotation marks omitted). The Court thus dismisses Plaintiff's § 1983 claims in Count Three as to the City of Hartford and Chief Roberts in his official capacity.

    b.  Count Three: Connecticut Constitutional Claims

14

Plaintiff has also alleged in Count Three violations of Article First, Sections 7 and 9 of the Connecticut Constitution, which protect against unreasonable searches and seizures and unlawful arrest, detainment and punishment. Defendants City of Hartford and Chief Roberts urge the Court to dismiss Plaintiff's state constitutional counts for municipal liability based on Plaintiff's failure to establish a viable *Monell* claim. Plaintiff does not address this contention in his Objection to Defendants' Motion to Dismiss. [Dkt. 30, P's Objection to MTD] The Court agrees with Defendants. Because Plaintiff has failed to establish a viable *Monell* claim against the City of Hartford for violations of the U.S. Constitution, his claims alleging municipal liability under the Connecticut Constitution also fail. See, e.g., *Seri v. Town of Newtown*, 573 F. Supp. 2d 661, 670 (D. Conn. 2008) (concluding that, because Plaintiff had failed to establish a viable *Monell* claim, state constitutional claims urging municipal liability under Article First, sections 7, 8 and 9 would also fail); *Odom v. Matteo*, 2010 WL 466000, at *3 (D. Conn. Feb. 3, 2010)(VLB) (dismissing state constitutional claims against municipality based on plaintiff's failure to state *Monell* claim). Thus, the Court dismisses Plaintiff's Connecticut constitutional claims in Count Three of his complaint as to the City of Hartford and Chief Roberts in his official capacity.

    c.  Count Three: Supervisory Liability of Chief Roberts

Plaintiff also alleges liability against Chief Roberts in his individual capacity. In his Third Count, Plaintiff alleges that the City of Hartford acted "by and through Chief Daryl K. Roberts, who is the final policymaker in the area of

law enforcement, and had in effect actual and/or de facto policies, practices and customs." [Dkt. 1, Complaint at ¶ 25] "Supervisory liability is a concept distinct from municipal liability, and is 'imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates.'" *Odom*, 772 F. Supp. 2d at 403 (quoting *Clay v. Conlee,* 815 F.2d 1164, 1170 (8th Cir.1987)). "An individual cannot be held liable for damages under § 1983 merely because he held a high position of authority," or was a supervisor. *Back v. Hastings On Hudson Union Free School Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (internal quotation marks and citations omitted). Instead, supervisory liability may be established by the following factors articulated in *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995):

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* [1]

Defendants here urge the Court to dismiss Plaintiff's Third Count against Chief Roberts in his individual capacity because, as "Plaintiff does not allege Chief Roberts's personal involvement in the alleged constitutional violation, Plaintiff cannot prove supervisory liability." [Dkt. 27-1, MTD at p. 9] Although this

---

[1] The Court notes that the recent Supreme Court decision in *Ashcroft v. Iqbal* 129 S. Ct. 1937 (2009) has called into question whether all of the *Colon* factors remain a basis for establishing supervisory liability and that "no clear consensus has emerged among the district courts within this circuit." *Aguilar v. Immigration and Customs Enforcement Div. of the United States*, No.07CIV8224, 2011 WL 3273160, at *10 (S.D.N.Y. August 1, 2011) (collecting cases).

16

argument addresses the first *Colon* factor, Defendants have failed to consider in their Motion to Dismiss the remaining four *Colon* factors. Notwithstanding, the Court notes that the complaint is deficient. Specifically, Plaintiff has failed to allege facts which if proved would tend to show that Chief Roberts participated directly in the specific constitutional violations alleged in the complaint. The complaint fails to allege specific facts tending to show that Roberts was informed of a specifically alleged violation through a report or appeal and failed to remedy the wrong. It fails to allege facts which if proved would tend to show that he created a specific policy or custom under which the alleged unconstitutional practices occurred, or allowed them to continue. It fails to allege facts tending to show that he was grossly negligent in supervising subordinates who committed the wrongful acts alleged in the complaint, or that he engaged in specific conduct from which a jury could conclude that he exhibited deliberate indifference by failing to act upon specific information which did or should have put him on notice that unconstitutional acts were occurring. Thus, although it would stand to reason that because Plaintiff has failed to allege a policy, custom or practice under *Monell* the remaining *Colon* factors also would likely fail, the Court declines to grant dismissal of Count Three as to Chief Roberts in his individual capacity.

      d.  Count Four: Negligence under Conn. Gen. Stat. § 52-557n

Plaintiff alleges that the City of Hartford is liable "[a]s a direct and proximate result of the conduct of the municipal employees of the City of Hartford" for his "personal injuries, emotional distress and shock to his entire

system." [Dkt. 1, Complaint at ¶ 26]  Defendants move to dismiss Plaintiff's claim for negligence on the basis that the City is not liable for discretionary acts and thus enjoys governmental immunity.

The Connecticut legislature codified the tort liability of municipalities in Conn. Gen. Stat. § 52–557n, which in subsection (a)(1) thereof states that "[e]xcept as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties..."  "However, Section 52–557n extends the same discretionary act immunity that applies to municipal officials to the municipalities themselves.  Section 52–557n(a)(2)(B) states that municipalities will not be liable for 'negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.'" *Odom*, 772 F. Supp. at 399 (quoting Conn. Gen. Stat. § 52–557n(a)(2)(B)).  "The hallmark of a discretionary act is that it requires the exercise of judgment … In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion."  *Coe v. Bd. of Educ.*, 301 Conn. 112, 118 (2011) (internal quotation marks and citation omitted).

As defendants note, a municipality's acts or omissions, including the failure to screen, train and supervise, are discretionary acts as a matter of law.  See*, e.g., Evoy v. City of Hartford*, No.CIVA397CV2400CFD, 2001 WL 777431, at *2 (D. Conn. June 25, 2001) ("Connecticut law provides that a municipality's acts or

18

omissions involving the failure to screen, hire, train, supervise, control, and discipline police officers are discretionary, governmental acts as a matter of law."); *Hughes v. City of Hartford,* 96 F. Supp. 2d 114, 119 (D. Conn. 2000) ("[E]xtensive and near-unanimous precedent in Connecticut clearly demonstrates that ... the failure to screen, hire, train, supervise, control and discipline [police] ... are discretionary acts as a matter of law.") (collecting cases); *Brooks v. Sweeney*, No.CV065005224, 2007 WL 1976089, at *1 (Conn. Super. Ct. June 12, 2007) ("supervision is generally considered to be a discretionary act" for purposes of 52-557n(a)(2)(B)).  Here, Roberts' alleged failure to train, supervise, or screen is discretionary under Connecticut law.  Consequently, the City is entitled to governmental immunity as to Roberts' alleged conduct.

However, as Plaintiff notes in his Objection to Defendants' Motion to Dismiss, Defendants do not address Plaintiff's claim of liability based on the Defendant Officers' allegedly negligent conduct for their arrest and use of excessive force against the Plaintiff.  Additionally, Defendants have failed to address this point in their Reply to Plaintiff's Objection.  Thus, because Defendants have offered no grounds for dismissal of this portion of Plaintiff's claim, nor any grounds to rebut Plaintiff's assertion that he is an "identifiable victim in danger of imminent harm" as to the Defendant Officers' conduct, this portion of Plaintiff's claim remains extant for summary judgment and trial.

V.    <u>Conclusion</u>

For the foregoing reasons, the Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.  The Court dismisses the § 1983 and Connecticut constitutional claims in Count Three against the City of Hartford and Chief Roberts in his official capacity.  The Court also dismisses Count Four against the City of Hartford as relates to Chief Roberts' alleged conduct.  The claims that remain extant in this action are those in Count Three alleging individual liability against Chief Roberts, those in Count Four alleging tort liability against the City of Hartford as relates to the Defendant Officers' allegedly negligent conduct, and Counts One and Two, which allege Fourth and Fourteenth Amendment federal constitutional and Connecticut constitutional violations, as well as violations of common law against the Defendant Officers and were not the subject of this Motion to Dismiss.

                                        IT IS SO ORDERED.


                                        _____/s/_____
                                        Hon. Vanessa L. Bryant
                                        United States District Judge


Dated at Hartford, Connecticut: September 24, 2012